IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>TYNELL JONES,<br>Defendant. | Criminal No. 3:26-cr-6 |

**The United States' Sentencing Memorandum and Motion for Upward Variance**

The United States of America, through undersigned counsel, submits the following position regarding the sentencing of the defendant, Tynell Jones and Motion for Upward Variance. The defendant pled guilty to one count – possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The probation officer calculated the defendant's Total Offense Level as 21 and a Criminal History Category as IV, resulting in an advisory guideline range of 57 to 71 months. The United States has no objection to the presentence investigation report. However, due to a number of aggravating factors outlined below, the United States moves this Court to vary upwards and seeks a sentence of 84 months of imprisonment.

**Discussion**

During sentencing, federal courts must follow a multi-step process that analyzes both procedural and substantive concerns. First, the Court must correctly calculate the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Second, "the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). To the extent the Court

deems some deviation from the Guideline range appropriate, it must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365 (internal quotation marks omitted). In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a). *See id.* at 364.

Under 18 U.S.C. § 3553(a), the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in § 3553(a)(2). Specifically, the Court's sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Section 3553(a) further "provides that in determining a particular sentence, a sentencing court must consider seven enumerated *factors*," *United States v. Shortt*, 485 F.3d 243, 247 (4th Cir. 2007) (emphasis in original), including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines, any pertinent policy statements, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense, 18 U.S.C. §§ 3553(a)(1), (3)-(7).

"The sentencing purposes identified in § 3553(a)(2)(A) [through] (D) are the four foundational *purposes* of sentencing that have long prevailed throughout [American] jurisprudence—(1) punishment, (2) deterrence, (3) incapacitation, and (4) rehabilitation." *Shortt*, 485 F.3d at 248-49 (emphasis in original) (citing Ilene H. Nagel, Structuring Sentencing

Discretion: The New Federal Sentencing Guidelines, 80 J. Crim. L. & Criminology 883 (1990)) (emphasis in original). "[M]ost of the specified purposes [of sentencing] listed in [§ 3553(a)(2)] hardly connote less punishment." *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006). Indeed, most of the purposes of sentencing "certainly do not suggest leniency; only one listed purpose—to provide the defendant with medical care and training—has a softer tone." *Id*. at 58 n.3 (citing 18 U.S.C. § 3553(a)(2)). And "[a]lthough still relevant," Congress and the Sentencing Commission have recognized that "th[is] fourth purpose, rehabilitation … [is] insufficient, standing on its own, to justify a particular sentence." *Shortt*, 485 F.3d at 249 (citing S. Rep. No. 98-225, at 38 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3221). Instead, the Senate Committee responsible for drafting the Sentencing Reform Act of 1984 "placed special emphasis on the first stated purpose—the need 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" *Id*. (citing S. Rep. No. 98-225 at 75). "As it observed, the first purpose 'should be reflected clearly in *all* sentences.'" *Id*. (emphasis in *Shortt*). A sentence that fails to serve the purposes of sentencing outlined in § 3553(a)(2) is just as unreasonable as one that is greater than necessary to serve such purposes. *United States v. Dowell*, 771 F.3d 162, 176 (4th Cir. 2014) (quoting *Shortt*, 485 F.3d at 248).

Here, an 84-month sentence, which constitutes an upward variance above the Guidelines, is an appropriate sentence, considering all the Section 3553(a) factors. A Court may impose a variance outside of the Guidelines range after consideration of all relevant departure provisions. *Gall v. United States*, 552 U.S. 38, 49 (2007). A Court does not need to find extraordinary circumstances when it gives a sentence outside the Guidelines range, but it "must support a major departure from the Guidelines with a more significant justification than a minor departure." *United States v. Johnson*, 126 F.4th 1000, 1010–11 (4th Cir. 2025). The ability to vary outside of the

Guidelines allows the Court to impose a sentence that it views as sufficient, but not greater than necessary, to serve the goals of sentencing in 18 U.S.C. § 3553(a). Here, such a sentence is appropriate as outlined below.

**I. Nature and Circumstances of the Offense**

On October 4, 2025, Richmond Police Officers responded to the 400 Block of West Charity Street for the report of random gun fire. PSR ¶ 5. Upon arrival, officers observed the defendant running down the street actively firing a firearm. PSR ¶ 7. Officers observed the defendant discharge the firearm three times. *Id.* Each discharge was in the direction of occupied residences and bystanders. Upon seeing this, officers drew their sidearms and commanded the defendant to get down on the ground, to which he complied. *Id.* The defendant was immediately detained and officers recovered the firearm, which was an AR style pistol chambered in 5.56 millimeter. The firearm had a round in the chamber and was equipped with a 30-round magazine, which had 10 rounds of ammunition remaining inside it. *Id.* Officers recovered three 5.56 cartridge casings at the scene of apprehension.

A review of the surveillance footage revealed that prior to law enforcement's arrival at the scene, gunfire was exchanged between two parties, one of whom was the defendant.[1] *Id.* The other party was never identified. Law enforcement canvassed the area and located six additional fired cartridge casings of 5.56mm (same type of ammunition that the defendant's firearm fired) and four fired cartridge casings of .45 caliber, presumed to be from the unidentified party. *Id.*

Surveillance footage shows the defendant discharged his firearm in the direction of a moving vehicle, in a residential area, where pedestrians were present. PSR ¶ 8. The pedestrians can be seen fleeing the area on the surveillance footage. *Id.* Additionally, the surveillance footage

[1] A courtesy copy of the surveillance videos will be provided to chambers for review.

captures the defendant, just moments before being apprehended, recklessly firing the firearm at an occupied building, where no threat was posed to the defendant. The surveillance footage shows that no one was firing at the defendant moments before his apprehension, and instead pedestrians were forced to flee and take cover to avoid being shot by the defendant.

The defendant's reckless actions put the pedestrians at Gilpin Court at risk of great bodily harm, if not death. The gunfire took place along crowded streets, where pedestrians, including children, were forced to run for cover. The defendant fired multiple rounds down public streets and in the direction of pedestrians who posed no threat to the defendant. Moreover, even in the instance where an unidentified individual can be seen firing back towards the defendant, the surveillance footage clearly shows the defendant acting as the aggressor by advancing towards the individual, who is seen stumbling backwards into trash cans as he returns fire and flees away from the defendant. Following that engagement, the defendant continues to run throughout Gilpin Court where he continues to shoot down occupied streets and in the direction of pedestrians who are forced to flee and hide from his active gunfire.

**II. History and Characteristics**

Despite being only 34 years old, the defendant has proven since the age of 14 that he has no respect for the law and that he will continue to recidivate either when at liberty, under criminal supervision, or during incarceration. PSR ¶ 29-42.

In 2007, at age 14, the defendant was arrested for Robbery and Brandishing a Firearm. PSR ¶ 29. Richmond Police records show that the defendant and two other juveniles sat on the front porch of a residence in Mosby Court. *Id.* The defendant and other juveniles approached the victim when he left the home and forced him at gunpoint to turn over his belongings. *Id.* The defendant was placed on supervised probation because of these offenses. *Id.* The defendant then violated his

supervised probation on four separate instances between 2011 and 2018. *Id.*

In 2011, at age 18, the defendant was arrested and convicted of Simple Assault. PSR ¶ 31. The police records show that the defendant and two other juvenile males waited for a victim to get off the school bus before assaulting the juvenile victim. *Id.* In 2013, at age 21, the defendant was again arrested and convicted of Assault and Battery. PSR ¶ 33. Police records show that the defendant assaulted a female, including a witness's account that the defendant bashed the victim's head against a fire hydrant. *Id.*

The defendant was convicted of 10 offenses between the ages of 18 and 24. PSR ¶ 31-41. These offenses range anywhere from Assault and Battery, Disorderly Conduct, to Possession of Controlled Substances. The defendant has historically shown a disregard for the rule of law even while under supervision.

Most recently the defendant was sentenced in 2018 by this Court for Possession of a Firearm by a Felon. PSR ¶ 42. This Court sentenced him to 78 months imprisonment and 3 years supervised release. *Id.* In that case, law enforcement attempted to conduct a traffic stop on a vehicle in which the defendant was a passenger. *Id.* As law enforcement attempted the traffic stop, the vehicle accelerated, and the defendant threw a firearm out of the window of the vehicle. *Id.* The vehicle ended up being a rental car and it was noted that the vehicle appeared to have bullet holes in the side. *Id.*

Furthermore, Bureau of Prison records show that the defendant had hearings for multiple prohibited acts while serving his federal sentence. *Id.* The defendant had hearings for destroying property, possession of a dangerous weapon, and threatening bodily harm. *Id.* Further demonstrating the defendant's refusal to reform. After the defendant's release from prison, he was found to be in violation of his supervised release by this Court on two separate occasions. *Id.* On

August 9, 2024, this Court ordered 60 days of imprisonment and two years supervised release. *Id.* Then on January 14, 2025, this Court ordered 8 months imprisonment. *Id.* The defendant was released on May 15, 2025, just 142 days before the underlying offense before this Court today. *Id.*

Considering the defendant extensive criminal history, refusal to reform while at liberty, and refusal to comply while under supervision, a sentence of 84 months is appropriate, without being greater than necessary.

## III. Seriousness of the Offense; Need to Provide Adequate Punishment; Need to Deter Future Criminal Conduct; Promote Respect for the Law; Need to Protect the Public

The defendant's criminal history demonstrates that he does not appreciate the seriousness of his criminal conduct, that he has never received an adequate punishment, and that he has no respect for the law. To appropriately deter his future conduct, the Court should not sentence him to anything less than 84 months. His criminal record and recidivist behavior prove that he presents a continued danger to the public.

The defendant has refused to change his behavior, despite being prompted to do so by this Court. PSR ¶ 42. The defendant was previously sentenced by this Court to 78 months imprisonment, yet just 142 days after being released from confinement he not only unlawfully possessed another firearm – but he was found firing that firearm at pedestrians, occupied vehicles and buildings. The defendant's current guidelines would provide the defendant with a more lenient sentence than his prior sentence, despite the reckless danger created by the defendant and despite this being a subsequent conviction for the same unlawful possession which resulted in his prior incarceration. Accordingly, this Court should grant the United States motion for an upward variance not only to deter the defendant from future criminal conduct, but to promote respect for the law, and fairly punish the defendant for the substantial risk created to the public. A sentence

of 84 months will send a clear message that a recidivist offender will find no reprieve for engaging in dangerous criminal conduct, just months after having been released for the same conduct.

**IV. Need to Provide Training and Treatment**

The defendant would also benefit from mental health treatment or counseling. The defendant faced a troubling childhood, having his father sent away to prison for life and his mother being murdered in front of him by another individual. PSR ¶ 62-63. The defendant admitted to experiencing intermittent nightmares and intrusive thoughts during the day about his mother's murder. PSR ¶ 77. The defendant acknowledged feelings of intense anger following the nightmares and intrusive thoughts. The defendant has exhibited symptoms that are consistent with Attention Deficit Hyperactivity Disorder and Post Traumatic Stress Disorder. *Id.* Therefore, mental health counseling and/or treatment would be beneficial to his health and wellbeing in prison and after his release.

**V. Need to Avoid Unwarranted Disparities**

A sentence of 84 months for a dangerous offense, with a recidivist offender, who has failed to learn from his prior mistakes, will ensure that no unwarranted disparity exists between the defendant's sentence and the sentence of a similarly situated defendant.

**Application of the Four-Point Enhancement**

The defendant has informed the United States and probation that he objects to the four-point enhancement for using or possessing the any firearm in connection with another felony offense. However, his objection lacks merit, and the United States submits that the presentence investigation report correctly applies the four-level enhancement under U.S.S.G. § 2K2.1(b)(7)(B). The Fourth Circuit has held that "a firearm is possessed in connection with another felony offense if the firearm facilitated or had the potential of facilitating the offense." *United States v. Alvarado Perez*, 609 F.3d 609, 612 (4th Cir. 2010) (citations and internal quotation marks omitted). If "the

firearm had some purpose or effect with respect to the other offense, including if the firearm was present for protection or to embolden the actor," the requirement is satisfied. *Id*. at 613 (cleaned up). In this instance, the defendant not only unlawfully possessed a firearm, but he also used that firearm in connection with multiple felonies under Virginia law. The defendant discharged his firearm at an occupied building in violation of Virginia Code § 18.2-279, and at an occupied vehicle in violations of Virginia Code § 18.2-154. Moreover, the surveillance footage makes clear that the defendant was shooting at and in the direction of numerous pedestrians; thus, the defendant's reckless discharges provide sufficient support for a violation of Virginia Code §§ 18.2-51.2 and 18.2-26, attempted unlawful and/or malicious wounding.

The surveillance footage, around 8:38pm, shows the defendant shooting at an unknown individual. The unknown individual can clearly be seen trying to flee the area and escape from the defendant. While the unknown individual can be observed returning fire in the direction of the defendant, the footage shows the defendant relentlessly firing his gun while advancing towards the unknown individual. Therefore, the defendant's use of the firearm is undoubtedly in connection with another felony – specifically attempted unlawful and/or malicious wounding.

Likewise, the surveillance footage, around 8:43pm, shows the defendant shooting his firearm at an occupied building. The footage shows an individual in a wheelchair entering the building just moments before the defendant's rounds can be seen striking the building and breaking the second-floor window. At the same time, an occupied vehicle can be seen traveling in the same direction as the defendant's gunfire. The surveillance footage reveals no threat nor justification for the defendant's reckless and indiscriminate fire. Instead, the footage shows the defendant carelessly firing multiple rounds in the direction of innocent bystanders while he runs down the

street. Accordingly, the presentence investigation report correctly applied the enhancement under U.S.S.G. § 2K2.1(b)(7)(B).

**Conclusion**

This Court should grant the United States' motion for an upward variance and impose a sentence of 84 months. Such a sentence satisfies the § 3553(a) factors, emphasizes the seriousness of the offense, promotes respect for the law, protects the public, and encourages the defendant not to return to criminal conduct upon his release, without being greater than necessary.

Respectfully submitted,

TODD W. BLANCHE
ATTORNEY GENERAL

THEOPHANI K. STAMOS
FIRST ASSISTANT UNITED STATES
ATTORNEY

By: /s/
Jeremiah Johansen
Special Assistant United States Attorney

Eric Gilliland
Assistant United States Attorney

Eastern District of Virginia
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Email: Jeremiah.Johansen@usdoj.gov
Telephone: (804) 819-5498